252 So.2d 649

## H. H. TIDWELL

v.

## James R. BADGETT and Thomas R. Badgett.

### 8 Div. 52.

Court of Civil Appeals of Alabama.

Sept. 22, 1971.

Dawson, McGinty & Livingston, Scottsboro, for appellant.

H. T. Foster and Robert S. Thomas, Scottsboro, for appellees.

BRADLEY, Judge.

Appellees, plaintiffs below, filed suit in the Circuit Court of Jackson County, against appellant, defendant below, for breach of an oral agreement.

The complaint contained three counts, two sounding in contract and the third based on the common counts.

Appellant pleaded the general issue and filed a counter-claim based on two promissory notes allegedly made by one of the appellees. Appellees denied any such indebtedness.

The case was tried before a jury and a verdict was rendered for appellees in the amount of $23,000.00.

There was a motion for new trial based mainly on the excessiveness of the verdict.

The trial court entered an order providing that the verdict and judgment of $23,000.00 in favor of appellees would be set aside and a new trial granted unless appellees agreed to a remittitur reducing the judgment to $10,000.00. The appellees so agreed.

The appeal to this court is from the original judgment and the judgment on the motion for new trial.

There were five assignments of error, all of which were concerned with the sufficiency of the evidence to support the judgments of $23,000.00 and $10,000.00 respectively.

The complaint stated that appellees and appellant had agreed to plant, cultivate, harvest and sell potatoes and share the profits or losses therefrom on a 50–50 basis. The complaint further stated that the potatoes had been sold and appellees had not received their share of the profits, nor been informed of their part of the loss, if there were no profits.

Appellee, James R. Badgett, testified that 116 acres of land were planted in potatoes. These potatoes were fertilized and plowed, and, at the proper time, they were harvested.

Mr. Badgett stated that the potato crop was a good one; that 85% of the crop was No. 1 potatoes, and the balance No. 2's. He testified there were only a few culls in the whole crop.

Mr. Badgett said that the acreage yielded an average of 160 bags of No. 1 potatoes per acre. A bag of potatoes weighed 100 pounds. He further stated that the price for the No. 1 potatoes ranged from $2.90 to $2.50 per 100 pounds.

According to Mr. Badgett's testimony, the potato crop brought over $50,000.00.

From the receipts for the sale of the potatoes would have to be deducted the expenses of raising and marketing them before any profits or losses could be ascertained.

Mr. Badgett testified about certain items of expense incurred in making the potato crop with which he was personally familiar, but he also stated that the appellant took care of most of the expenses and he did not know what they amounted to for the whole crop.

The evidence shows the expenses of the crop to be in the neighborhood of $35,000.00. This evidence results from the testimony of appellee, James R. Badgett, as to certain items of expense and the testimony and records of appellant as to the expenses incurred in raising and marketing the potato crop. The records of appellant were introduced into evidence as appellees' exhibits. The amount of $35,000.00 included the cost of the seed potatoes, the fertilizer and ammonium nitrate, the expense of digging

the potatoes and having them picked up by migrant labor after they had been dug, and the expense of grading and marketing the potatoes after they had been picked up from the field.

The evidence further shows that appellee, James R. Badgett, borrowed $6,000.00 from a bank in Stevenson, Alabama and turned over $4,000.00 of this sum to appellant for use in defraying expenses of the potato crop. The evidence also shows that appellant picked up this note at the bank.

The appellant testified that the potatoes that were harvested and sold from the 116 acres brought only $32,531.91, and the expenses incurred in making and harvesting the potato crop amounted to $26,302.32.

Appellant says that not only was the jury's verdict of $23,000.00 excessive and not supported by the evidence, but that the trial court's judgment reducing the amount to $10,000.00 is also excessive and not supported by the evidence.

Apparently the trial court considered the $23,000.00 verdict excessive, because it ordered a new trial unless there was a remittitur of $13,000.00 of that verdict. And, there was an agreement by the appellees to remit the excess over $10,000.00.

It was said in Allen v. Harper, 277 Ala. 691, 174 So.2d 331, that:

"The basic reason for disturbing the verdict of a jury because of excessive or inadequate damages is precisely the same as for disturbing it because it is not supported by the evidence, or because it is opposed to the clear and convincing weight of the evidence. In either case, the inquiry is directed to one feature of the verdict, the damages awarded."

In Birmingham News Co. v. Lester, 222 Ala. 503, 504, 133 So. 270, the Supreme Court, in discussing the trial court's authority in dealing with verdicts considered to be excessive or inadequate, said:

"* * * In all these matters he is in like position with the jury, and clothed with the power and duty to relieve against verdicts, which * * * are * * * found to be clearly wrong and unjust from any cause, whether * * * from mistake, inadvertence, or failure to comprehend and appreciate the issues."

Then, the Supreme Court said in Allen v. Harper, supra, that:

"* * * if the court grants a new trial on the ground that the verdict is * * * unjust on the basis of the evidence, the court on appeal will not reverse unless the evidence plainly and palpably supports the verdict."

In applying this legal yardstick to the facts in the present case, we find that the $23,000.00 verdict was not plainly and palpably supported by the evidence.

Our next consideration is whether the judgment of the trial court on the motion for new trial fixing the amount due appellees at $10,000.00 is supported by the evidence in the case.

■ In making the analysis of the judgment on the motion for new trial wherein the award was reduced to $10,000.00, we are cognizant of the maxim that such judgments are most carefully scrutinized and are not reversed unless plainly and palpably wrong. McDaniel v. Birmingham News Co., 276 Ala. 320, 161 So.2d 799.

■ The purpose of awarding damages for the breach of a contract is to put the injured party in the position he would have been in had the contract been fully performed. Coastal States Life Ins. Co. v. Gass, 278 Ala. 656, 180 So.2d 255. And the measure of the damages to be awarded is the stated contract amount or the profits less expenses. Cunningham v. Lowery, 45 Ala.App. 700, 236 So.2d 709.

■ In the case at bar the measure of the damages would be one-half of the profits from the potato crop ascertained by taking the total amount of sales and subtracting therefrom the total amount of ex-

penses. This would mean that the appellees' damages could not exceed $7,500.00.

The item of $4,000.00 that was the subject of much controversy in the testimony would not figure in the total amount due the appellees for the reason that appellant, in effect, gave it back to appellee, James R. Badgett, when he picked up the note at the bank.

Inasmuch as the judgment of the trial court on the motion for new trial reducing the jury's verdict to $10,000.00 is plainly and palpably not supported by the evidence, it is in error.

The judgment of the trial court on the motion for new trial being erroneous, this case is reversed and remanded for a new trial.

Reversed and remanded.