Appellant, MOCO, Incorporated (MOCO), appeals from a judgment based on a jury verdict in favor of appellees, Clarence Gaines, Jr. and Harry Merrill, d/b/a Crossroads Mini Mart, and Forrest Turner.
Gaines and Merrill sell gasoline and various other items, including beer and cigarettes, at a place called Crossroads Mini Mart. They lease the property on which Crossroads Mini Mart is located from the landowner, Forrest Turner. Gaines and Merrill had an arrangement with MOCO, whereby MOCO supplied them with gasoline to sell at their service station on a consignment basis. The gas pumps, tanks, control box, wiring, junction box, and canopy were supplied by MOCO. The arrangement between MOCO and Gaines and Merrill ended in December 1983. MOCO then attempted to remove the above described articles (e.g. pumps, tanks) from the lot, whereupon Gaines and Merrill called the sheriff and forced MOCO to stop. MOCO then filed suit against Gaines, Merrill, and Turner, claiming that it was entitled to possession of the above articles, and further claiming the reasonable value for the hire and use of these articles during appellees' wrongful detention thereof. MOCO sought recovery of these articles or in the alternative their value, and damages for the detention in the amount of $4,550.
Appellees filed an answer to MOCO's complaint, claiming that Turner owned the above described articles by virtue of their annexation to Turner's property. Gaines and Merrill filed a counterclaim alleging that MOCO wrongfully cut off their supply of gasoline and thereby caused an interruption in service to their customers. They further alleged that MOCO had breached an oral agreement to repair and pay for any damages caused by their removal of gas tanks from the Mini Mart lot. Gaines and Merrill claimed damages in the amount of $15,000.
The jury found for the appellees (Gaines, Merrill, and Turner) and against MOCO on its complaint, and further found in favor of Gaines and Merrill on their counterclaim. The jury assessed damages against MOCO in the amount of $3,900. MOCO filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The court made no ruling on this motion, hence this appeal.
MOCO raises several issues on appeal, asserting mainly that the jury's verdict on its complaint and Gaines's and Merrill's counterclaim is palpably wrong, and that the trial court erred in failing to grant its motion for a new trial.
We begin our review with MOCO's first issue raised in brief, in which MOCO contends that the evidence does not support *Page 472 
the jury's verdict in favor of Gaines and Merrill on their counterclaim.
As noted above, Gaines and Merrill asserted in their counterclaim that MOCO had wrongfully breached an agreement to supply gasoline to them and also breached an agreement to repair any damage caused to the lot by MOCO's removal of gas tanks. We note at the outset that Gaines and Merrill failed to prove any damages as a result of MOCO's removal of the gas tanks, and therefore the jury's verdict cannot be supported on that count. Where, however, there is at least one good count supported by the evidence to which the jury verdict on the counterclaim can be based, then the verdict is good. Championv. Gaines, 48 Ala. App. 484, 266 So.2d 150 (Ala.Civ.App. 1972). We now turn to the count in the counterclaim claiming damages for breach of an oral contract to supply gasoline to determine whether the jury's verdict on the counterclaim is supported.
It is undisputed that an oral agreement existed between MOCO and Gaines and Merrill. The parties agree that MOCO was to deliver gasoline to Gaines and Merrill on a consignment basis. Gaines testified that he entered into the above agreement with MOCO in April 1983. Merrill testified that MOCO would audit their gasoline tanks every Thursday and deliver on Friday or Monday at the latest if the audit revealed a low supply of gasoline. This course of conduct continued for several months. MOCO then suddenly stopped delivery of gasoline in early December 1983. Gaines and Merrill alleged that they ran out of gasoline on December 8th, resulting in loss of revenue to their service station. MOCO concedes that it stopped delivering gasoline in December, but claimed that it did so at Gaines's and Merrill's request. MOCO also contends that its conduct was not wrongful because either party could terminate the agreement at any time. Gaines and Merrill refuted MOCO's contentions and testified that they did not agree that their arrangement could be terminated at any time. After the close of the testimony, the court instructed the jury that it had to determine what the agreement between MOCO and Gaines and Merrill was, and whether the arrangement could be terminated at any time. The court further stated that if the jury found that the arrangement could be terminated at any time, then MOCO's conduct was not wrongful.
Where a contract is verbal and detailed by witnesses, its terms and the intention of the parties should be found by the jury. Keel v. Weinman, 266 Ala. 684, 98 So.2d 611 (1957). Furthermore, where the evidence is conflicting as to whether there is a contract and a breach thereof, it is for the trier of fact, in this case the jury, to resolve that conflict.Clayton v. Simpson, 346 So.2d 457 (Ala.Civ.App. 1977). The jury "should take the truth wherever found in the evidence; may accept the evidence of one side in part; and of the other in part; and may work out a verdict supported by any reasonable theory of the evidence." Vester J. Thompson, Jr., Inc. v.Shelton, 277 Ala. 148, 167 So.2d 715 (1964). A jury verdict is presumed to be correct and will not be disturbed on appeal unless it is against the preponderance of the evidence or clearly divergent from the law. Goodson v. Elba Baking Co.,408 So.2d 498 (Ala. 1981).
The jury could have reasonably concluded from the testimony that MOCO wrongfully breached an oral agreement to supply Gaines and Merrill with gasoline. The jury could also have concluded that the agreement did not provide that the contractual arrangement could be terminated by either party at any time, but that instead some notice was required prior to termination. See § 7-2-309, Code 1975 (termination of a contract except upon the happening of some agreed-upon event requires that reasonable notification be received by the other party; an agreement dispensing with notification is invalid if its operation would be unconscionable). The jury properly determined that MOCO's actions caused Gaines and Merrill to suffer damages as evidenced by the overall reduction of sales at their business. Gross sales of gasoline alone during the month. of December *Page 473 
1983 amounted to $12,000 less than sales in October. We conclude, therefore, that there was evidence to support the jury's assessment of damages against MOCO in the amount of $3,900, and affirm that portion of the jury's verdict finding in favor of Gaines and Merrill on their counterclaim.
MOCO next contends that the jury's verdict against MOCO on its complaint is palpably wrong and should be set aside.
MOCO's complaint contained a claim for possession of certain articles (gas pumps, tanks) that it had installed at the Crossroads Mini Mart. Gaines and Merrill claimed that these articles were affixed to the real property and therefore belonged to Forrest Turner, the owner of the lot. The jury returned a verdict in favor of Gaines, Merrill, and Turner on MOCO's complaint.
The trial court instructed the jury that in reaching a decision on MOCO's complaint they had to determine whether the parties intended that the above articles become fixtures and therefore become part of the real estate to which they were attached, or whether the articles were intended to remain MOCO's personal property, capable of separation from the real estate. The court outlined several factors for the jury to consider in reaching a decision, including (1) actual annexation of the articles to the realty or something appurtenant thereto, (2) appropriateness of the articles to the use or purpose of the realty to which the articles are attached, (3) the intention of the party making the annexation that the articles be a permanent attachment to the freehold. Generally, these three factors must be met in order for personalty to become a fixture. Thompson on Real Property § 56 (1980). See also, Milford v. Tennessee River Pulp Paper Co.,355 So.2d 687 (Ala. 1978). The court noted that the intention of the parties was the most important factor. In addition to the above instructions on personalty attached to realty, the court instructed the jury that where a landowner lets his premises for business purposes, knowing of the probable introduction thereon of the implements necessary to carry on the business, he (the landowner) impliedly contracts that the implements will remain personalty. These implements are known as "trade fixtures." Walker v. Tillis, 188 Ala. 313, 66 So. 54
(1914). In a similar vein, the court then instructed the jury that "an item which is erected by one under a license or with express consent of the landowner, . . . remains the personal property of the annexor."
The evidence is as follows. Floyd Turner owned the Mini Mart lot for several years and leased the lot to Richard Zaner in the late 1970's. Zaner operated a curb market on the lot until 1979, when he entered into an agreement with MOCO to operate a service station. Pursuant to that agreement, MOCO installed gas tanks, pumps, consoles, junction boxes, and an aluminum canopy on the lot. MOCO also supplied Zaner with gasoline, which Zaner sold on a consignment basis. Zaner and MOCO both testified that MOCO could remove the articles at any time after their arrangement ended. Zaner stated that Floyd Turner was present when MOCO installed the above described articles and knew about Zaner's arrangement with MOCO. Floyd died in 1982, whereupon his brother, Forrest Turner, inherited the property and continued the lease agreement with Zaner. Zaner sold his business to Gaines and Merrill in 1983. The parties concede that the articles in question were not part of the sale. Gaines and Merrill then became Forrest Turner's tenants and operated the service station on the lot. MOCO delivered gasoline to the service station for Gaines and Merrill to sell on a consignment basis. Gaines testified that he was aware of Zaner's agreement with MOCO permitting MOCO to remove the articles in question, but contended that he and MOCO had no such agreement. Gaines and Merrill, however, offered to buy the articles from MOCO after their arrangement with MOCO ended. Forrest Turner contended at trial that the articles belonged to him because "when you nail up *Page 474 
something on somebody's land that way, well, you can understand, it's supposed to stay there." However, he failed to object when MOCO entered the lot and removed some of the pumps, tanks and consoles. Forrest stated that he had been familiar with the lot all his life and that he had visited the property frequently. He was aware that someone else had paid for and placed the articles on the lot. Forrest knew also that Zaner, Gaines, and Merrill used the articles in question to operate their service station business. He never objected to the presence of the articles on his lot, nor did he object when MOCO installed canopy lights on the property in 1983. Generally, where the owner of the realty permits persons with no interest in the realty to attach articles onto the realty, as in this case, the right of the person annexing the articles to remove them is implied. 5 American Law of Property § 19.10 (A.J. Casner 1952). A licensee, tenant, or tenant-at-will may remove fixtures attached for the purpose of carrying on his trade or business. See American Law of Property § 19.1-23.66,supra. See also, Milford v. Tennessee River Pulp Paper Co.,supra.
In view of the above evidence, we conclude that the articles in question, i.e. the pumps, tanks, canopy, wiring, etc., were intended by the parties involved to be trade fixtures and thereby removable upon termination of the contract to supply gasoline. Therefore, the jury's verdict on MOCO's complaint, when considered in the light of the court's oral charge, is against the great weight of the evidence. SeeMassengale-Manaster Poultry Co. v. Burnett, 284 Ala. 465,225 So.2d 869 (1969). The jury's verdict on MOCO's complaint must be set aside and a new trial granted on the complaint.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
WRIGHT, P.J., and HOLMES, J., concur.